# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CHRISTINE A. OPP,** <br><br> Plaintiff, <br><br> v. <br><br> **RICHARD A. DEVINE, in his individual capacity; ANITA ALVAREZ, in her official capacity; ROBERT J. MILAN, in his individual capacity; BERNARD J. MURRAY, in his individual capacity; JOHN G. MURPHY, in his individual capacity; THE OFFICE OF THE STATE'S ATTORNEY OF COOK COUNTY, an agency of the State of Illinois; THE COUNTY OF COOK, an Illinois municipal corporation, body politic and unit of local government; and THE COOK COUNTY BOARD OF COMMISSIONERS in their official capacity,** <br><br> Defendants. | No. 08 C 6120 |

## MEMORANDUM OPINION AND ORDER

Plaintiff brought a three count complaint asserting violations of the consent decree entered in *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315 (N.D. Ill. 1979) (Count I), violations of the Age Discrimination in Employment Act, 29 U.S.C. § 626 ("ADEA") (Count II), and "punitive discharge" (Count III) against all defendants.[1]  Defendants moved to dismiss

---

[1] Anita Alvarez, currently the Cook County State's Attorney, automatically substitutes for defendant Richard Devine in his official capacity pursuant to Fed. R. Civ. P. 25(d)(1).

the complaint[2] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and moved for sanctions pursuant to Fed. R. Civ. P. 11. This opinion resolves both motions, as well as plaintiff's motion to amend her complaint.

I.

Plaintiff was an Assistant State's Attorney employed by defendant Office of the State's Attorney of Cook County ("OSA") from January of 1997 to February of 2007. At a meeting on February 16, 2007, when plaintiff was fifty-seven years old, defendants Murphy and Murray informed plaintiff that her employment was being terminated as a result of budget cuts mandated by defendant Cook County Board of Commissioners (the "Board"). Plaintiff claims that the proffered reason for her termination was pretextual. She does not dispute that OSA reduced its workforce as a result of countywide budget cuts. She alleges, however, that she was

---

[2] Although defendants' motion seeks dismissal of the "Complaint," the body of the motion seeks dismissal of her *Shakman* claim, her punitive dismissal claim, and other claims not in fact presented here (under the Americans with Disabilities Act ("ADA") and § 1983), while it does not mention plaintiff's ADEA claim at all. It appears defendants failed to make the appropriate edits to the motion they filed on the same day in *Barrett v. Devine*, 08 C 6124, which did assert ADA and § 1983 claims but no ADEA claim. Plaintiff's responses reflect similar oversights. Although I admonish both parties to be more careful in the future, rather than penalize them for these formalistic errors, I rely on the substance of their arguments to ascertain their respective positions. That said, as discussed in more detail below, I am unable to determine whether defendants seek dismissal of Count II in whole or in part. Because plaintiff is entitled to all reasonable inferences in her favor, I interpret the motion as seeking only partial dismissal of Count II.

2

selected for termination over less qualified or equally qualified peers based on 1) her lack of a "political sponsor" with sufficient "clout" to have her name removed from the termination list; 2) her age; and 3) her refusal to go along with an alleged unlawful scheme proposed by defendant Cassidy in August of 2006.

Defendants argue that defendants Alvarez and OSA are immune from suit under the Eleventh Amendment, and that defendant Board is a non-suable entity. On these grounds, they seek dismissal of all claims against these defendants. Defendants also argue that plaintiff's *Shakman* claim, which seeks a monetary award for asserted violations of the consent decree entered in *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315 (N.D. Ill. 1979), should be dismissed against all defendants because 1) individual defendants cannot be held liable for violations of the *Shakman* order, and 2) the *Shakman* order does not provide a legal basis for a damages claim. Finally, defendants argue that the ADEA claim must be dismissed against the individual defendants because individual supervisors who are not otherwise employers cannot be sued under ADEA. Defendants seek sanctions on the grounds that plaintiff objectively lacked a reasonable basis for bringing any of these claims against the state agent defendants, for bringing the *Shakman* and ADEA claims against the individual defendants, and for bringing the "fictional" claim of punitive discharge.

II. Defendant's Motion to Dismiss

A motion to dismiss tests the sufficiency of a complaint, not its merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). I must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). The plaintiff must, nevertheless, allege sufficient factual material to suggest plausibly that she is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

A. The Board as Defendant

Plaintiff concedes that defendant Board is a non-suable entity and joins defendants' motion to dismiss all claims against this defendant. The joint motion is granted.

B. Plaintiff's "Punitive Discharge" Claim

Plaintiff concedes that this count does not state a cause of action and joins defendants' motion to dismiss Count III in its entirety. The joint motion is granted.

C. Eleventh Amendment Immunity

Defendants rely primarily on *Garcia v. City of Chicago*, 24 F.3d 966 (7th Cir. 1994), for their argument that defendants Alvarez and OSA are immune from suit under the Eleventh Amendment. In *Garcia*, the Seventh Circuit held:

> The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities. *Will*

4

> *v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Whether a particular official is the legal equivalent of the State itself is a question of that State's law, *Santiago v. Daley*, 744 F.Supp. 845, 845 & n. 1 (N.D.Ill.1990), and the Illinois Supreme Court decided in 1990 that State's Attorneys are state officials. *Ingemunson v. Hedges*, 133 Ill.2d 364, 140 Ill.Dec. 397, 400, 549 N.E.2d 1269, 1272 (1990) (State's Attorneys are state, not county, officials).

*Id*. at 969. Plaintiff does not deny that under *Garcia*, all of her claims against OSA and Alvarez are barred; she simply argues that *Garcia* was wrongly decided. I am not at liberty to disregard controlling precedent, however, and plaintiff advances no colorable theory under which her claims against OSA and Alvarez survive *Garcia.*

Plaintiff's citation to *EEOC v. Board of Regents of the University of Wisconsin System*, 288 F.3d 296 (7th Cir. 2002), is puzzling. In plaintiff's words, the *Board of Regents* court "reaffirmed its authority to determine whether or not a government agency is an office of the state, or, alternatively, the local government." Plaintiff does not direct me to any portion of the *Board of Regents* decision that purportedly articulates that proposition. In *Board of Regents,* there was apparently no dispute that the defendant was an arm of the state. The Eleventh Amendment issue in that case related to whether the EEOC's action on behalf of four individuals should be considered an individual lawsuit (in

5

which case the defendant was entitled to sovereign immunity) or an action by a federal agency (in which case it was not). The court allowed the case to proceed because it concluded that the suit was properly characterized as an action brought by a federal agency, not because it concluded, as plaintiff wishfully suggests, that the defendant was not an arm of the state. *Id*. at 299.

Plaintiff's citation to *Mackey v. Stanton*, 586 F.2d 1126 (7th Cir. 1978), is similarly unavailing because the *Mackey* court--like the *Garcia* court--looked to state law to establish whether the agency defendant was an arm of the state or local government. 586 F.2d at 1130-31. As *Garcia* observed, the law of Illinois provides that Illinois State's Attorneys are state officials. 24 F.3d at 969 (citing *Ingemunson v. Hedges*, 133 Ill.2d 364, 140 Ill.Dec. 397, 400, 549 N.E.2d 1269, 1272 (1990)). *Mackey* offers plaintiff no escape from these dispositive holdings.[3]

Based on the foregoing, I conclude that the Eleventh Amendment immunizes defendants Alvarez and OSA from liability for plaintiff's ADEA and *Shakman* claims. Accordingly,

---

[3] The same is true of the Second Circuit case plaintiff cites in her supplemental response. *Woods v. Rondout Valley Central School District Board of Education*, 466 F.3d 232, 237 (2nd Cir. 2006)(Eleventh Amendment inquiry "looks to those provisions of New York State law" to define the defendant's character). The remaining authorities plaintiff cites are equally unavailing.

defendant's motion to dismiss Counts I and II against these defendants is granted.[4]

D. Plaintiff's *Shakman* claim

Plaintiff alleges that "defendants' actions in terminating Plaintiff's employment," while less qualified or equally qualified employees with "political sponsorship" were not terminated, violates the consent decree issued in *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315 (N.D. Ill. 1979). The *Shakman* order enjoined certain government employers from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." Id. at 1358.[5]

---

[4] At the close of plaintiff's argument that State's Attorneys should be considered county officials in spite of *Garcia*, she urges me to exercise supplemental jurisdiction over her ADEA claim pursuant to 28 U.S.C. § 1367 (or, in the alternative, to transfer this claim--at least I think plaintiff meant to say "transfer," as the request as written lacks a verb--to state court). To the extent this argument purports to respond to defendants' assertion of Eleventh Amendment immunity, it is a woefully misguided non-sequitur. ADEA claims arise under federal law, so there is no question that I have original jurisdiction over claims properly brought under the statute. The issue here is whether the state agent defendants can be sued for damages in federal court under ADEA. For the reasons discussed above, I conclude that they cannot.

[5] The decades-long *Shakman* litigation produced several consent decrees. The one relevant to plaintiff's claims, excerpted above, was entered on May 5, 1972. In her complaint, plaintiff also cites *Shakman v. Dunne*, 829 F.2d 1387 (7th Cir. 1987), which vacated and remanded certain portions of a separate consent decree, issued in

Defendants first argue, and plaintiff concedes, that individual defendants cannot be held liable in their individual capacities for any alleged violations of the *Shakman* consent decree. The parties' joint motion to dismiss Count I against the individual defendants is granted.

This leaves only defendant Cook County as potentially liable for the violation plaintiff alleges in Count II. As noted above, defendants argue that the consent judgment in *Shakman* does not provide an independent cause of action for damages, citing *Everett v. Cook County Board of Commissioners*, 2008 WL 94791 at *4 (N.D. Ill., Jan. 8, 2008) (Kendall, J.). Defendants misread *Everett*. Although the court in *Everett* indeed observed that "Shakman proceedings are equitable, typically seek immediate injunctive relief, and confer no right to a jury trial," it specifically rejected the argument that the *Shakman* consent decrees establish no independent federal cause of action. *Everett*, 2008 WL 94791 at *4. In particular, the *Everett* court noted that jurisdiction over claims seeking to enforce the *Shakman* consent decrees (as opposed to claims seeking to modify the decrees), is not limited to the court that originally issued the decrees, citing *Perlman v. Cook County Bd. Of Commissioners*, 2007 WL

1983, which does not appear to be relevant here, since it related to "patronage hiring" practices, not to employment decisions affecting current employees such as plaintiff.

1302973 at *5 (N.D. Ill., May 2, 2007) (Manning, J.) ("a plaintiff may sue to vindicate a right established by the Shakman consent decree"), and may be brought as independent civil actions. *See id*. Indeed, a November 30, 2006 Supplemental Relief Order ("SRO") that was issued by the *Shakman* court and agreed to by Cook County provides that "[a]ny individual who alleges that she or he is a victim of unlawful political discrimination in connection with any aspect of government employment with the County in violation of the [1972 or 1994 *Shakman* consent decrees] or the SRO at any time after the final approval of this SRO may seek relief through the claim and arbitration procedure established by this SRO *or may pursue his or her claim under applicable law.*" *Shakman v. Democratic Organization of Cook County*, 69 C 2145, Docket No. 531 (N.D. Ill., Nov. 30, 2006)(Anderson, J.) (emphasis added).

Moreover, it is clear that the law generally forbids political patronage dismissals. In *Elrod v. Burns*, 427 U.S. 347 (1976), one of the seminal cases involving politically motivated employment decisions, public employees alleged that they were "discharged or threatened with discharge solely for the reason that they were not affiliated with or sponsored by the Democratic Party." *Id*. at 350. The *Elrod* plaintiffs sought declaratory, injunctive, and other relief for

9

violations of the First and Fourteenth Amendments and of 42 U.S.C. §§ 1983, 1985, 1986, and 1988. After noting that the case was governed by the "specific limiting principles of the First Amendment" *id*. at 357 n. 10 (quoting *Board of Education v. Barnette*, 319 U.S. 624, 639 (1943)), the *Elrod* court held that "the practice of patronage dismissals clearly infringes First Amendment interests," *id*. at 360, a conclusion it reaffirmed in *Branti v. Finkel*, 445 U.S. 507, 515-516 (1980).

Of course, plaintiff has not alleged any constitutional violation as a result of her dismissal, only that her dismissal violated rights established by the *Shakman* consent decree.[6] Regardless of her theory of liability, it appears her claim may ultimately be barred by *Livas v. Petka*, 711 F.2d 798 (7th Cir. 1983). In *Livas*, the Seventh Circuit held that Assistant State's Attorneys may be hired and fired for reasons of political patronage under the exception, recognized in *Elrod* and *Branti*, applicable to public employees who occupy policy-making or confidential positions. *See also Hernandez v. O'Malley*, 98 F.3d 293, 294 (7th Cir. 1996) (noting that *Livas* "holds that politics are a constitutionally permissible consideration when hiring and firing assistant state's

---

[6]The *Everett* court noted that First Amendment or other constitutional claims "typically accompany a Shakman petition," 2008 WL 94791 at *4, but the absence of a specific constitutional claim was not fatal to the *Shakman* claim in that case.

10

attorneys.")

Defendant has not raised *Livas*, however. Moreover, plaintiff asserts that defendant OSA "withheld" decision-making authority from her and concludes that she was not an exempt employee as contemplated by the *Shakman* decrees. Of course, plaintiff's *Shakman* claim is no longer pending against OSA, and it is not clear that these assertions will enable her to overcome *Livas* in her claim against Cook County. Nevertheless, without meaningful input from the parties on this issue, it is premature to hold that plaintiff's claim is barred by *Livas*. Because her claim otherwise appears to satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a), defendants' motion to dismiss Count I against Cook County is denied.

E. Plaintiff's ADEA claim

Defendants argue that the individual defendants cannot be liable under ADEA. Although the Seventh Circuit has not expressly held that there can be no individual liability under ADEA, it has repeatedly suggested as much, holding that individuals cannot be liable under the Americans with Disabilities Act ("ADA"), *EEOC v. AIC Security Investigations*, 55 F.3d 1276 (7th Cir. 1995), or Title VII, *Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995), and likening these statutes to ADEA in this respect. *Matthews v. Rollins Hudig*

11

*Hall Co.*, 72 F.3d 50, 52 N. 2 (7th Cir. 1995) (principle of no individual liability under ADA applies equally to ADEA); *see also Cianci v. Pettibone Corp.*, 152 F.3d 723, 729 (7th Cir. 1998) ("we decline Cianci's invitation to reconsider our decisions holding that individual supervisors who are not otherwise employers cannot be sued under Title VII or the ADEA"); *Horwitz v. Board of Education*, 260 F.3d 602, 610 N.2 (7th Cir. 2001) ("we have suggested that there is no individual liability under the ADEA"). In any event, plaintiff does not respond to this argument. Accordingly, defendants' motion to dismiss Count II against the individual defendants is granted.

Again, only defendant Cook County is left potentially answerable for the violation plaintiff alleges. It is not clear whether defendants intended to seek dismissal of plaintiff's ADEA claim against Cook County. What is clear is that defendants offer no argument as to why this claim cannot proceed. Moreover, although the introduction to defendants' brief states that they seek dismissal of the entire case, the conclusion to the brief seeks only "to dismiss all individual defendants from the Complaint,[7] as well as Counts I, and III of Plaintiff's Complaint in their entirety." This conclusion appears not to challenge plaintiff's ADEA claim against Cook

---

[7] I presume based on their argument that defendants intended to include Alvarez and OSA here.

County.

The scope of defendants' motion to dismiss plaintiff's ADEA claim is impossible to determine based on defendants' inconsistent submissions. Despite substantial doubts about the sufficiency of plaintiff's ADEA claim against Cook County based on her allegations, I am loath to dismiss the claim *sua sponte*. Count II against Cook County thus survives defendants' motion to dismiss.

### III. Defendant's Motion for Sanctions

Defendants seek Rule 11 sanctions on the grounds that plaintiff's counsel engaged in unreasonable conduct when he employed "the ostrich-like tactic of pretending that potentially dispositive authority against a litigant's position does not exist." *Mars Steel Corp. v. Continental Bank*, N.A. 880 F.2d 928, 939 (7th Cir. 1988) (imposing sanctions), and made various frivolous legal arguments. Although I find that several of plaintiff's arguments are indeed without merit, it does not appear that she or her counsel brought these claims for any improper purpose. Moreover, as noted above, defendants' own submissions can hardly be deemed exemplary, as their motion facially sought to dismiss claims not even asserted, while errors and inconsistencies in their supporting memoranda made it impossible to discern exactly what relief they seek. Under

13

the circumstances, defendants' motion for sanctions is denied, and both parties are admonished to exercise due care in the preparation of future submissions.

IV. Plaintiff's Motion to Amend Complaint

Fed. R. Civ. P. 15(a) sets forth a liberal standard for allowing plaintiffs to amend their complaints. "In the absence of any apparent or declared reason-such as undue delay, ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'" *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiff proposes to amend her original complaint by adding a fraud/conspiracy claim and by recaptioning her noncognizable "punitive discharge" claim as a claim for retaliatory discharge. Plaintiff's motion is granted, though I caution her to bring the proposed claims in a manner that is both consistent with this opinion and mindful of the heightened pleading standard applicable to claims of fraud.

V. Conclusion

For the reasons set forth above, defendants' motion to dismiss is granted in part; defendants' motion for sanctions is denied; and plaintiff's motion for leave to amend her complaint is granted. Counts I and II survive against

defendant Cook County, and plaintiff may file an amended complaint, consistent with this opinion, within the proposed twenty-eight day period.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**

United States District Judge

Dated: April 15, 2009